GRIEVANCE COMMITTEE, HARTFORD-NEW BRITAIN
JUDICIAL DISTRICT *v.* ALEXANDER GOLDFARB
(4421)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 8, 1986—decision released January 20, 1987

*William F. Gallagher,* with whom, on the brief, was *Evelyn A. Barnum,* for the appellant (plaintiff).

*Joseph F. Skelley, Jr.,* with whom was *Deborah S. Freeman,* for the appellee (defendant).

SPALLONE, J. The plaintiff grievance committee is appealing from the judgment of the trial court finding that the plaintiff had failed to prove that the defendant had violated certain sections of the Code of Professional Responsibility while acting as conservator of the person and the estate of Ethel Donaghue. The plain-

tiff initiated the proceedings below by presentment of the defendant, an attorney, pursuant to Practice Book § 31.[1] The sole issue presented to us on appeal is whether the trial court erred in denying the plaintiff's motion to amend its complaint. The trial court denied the motion to amend after concluding that the plaintiff could not amend the complaint to expand the allegations beyond those contained in the original complaint and a prior amended complaint.

For purposes of this appeal, the following facts are relevant. In late 1978 and early 1979, a question arose as to whether Donaghue, a Connecticut citizen then in her early eighties, was capable of managing her affairs. At that time, Donaghue was a wealthy woman with an estate in excess of thirty million dollars. On January 3, 1979, William Graulty, a Connecticut attorney who had handled Donaghue's affairs for some years, applied to be appointed conservator of the estate and person of Donaghue. In doing so, Graulty acted at the suggestion of James Kinsella, Judge of the Hartford Probate Court. Also on January 3, 1979, the defendant, an attorney practicing in Connecticut since 1951, was appointed guardian ad litem of Donaghue by the Hartford Probate Court. On January 15, 1979, after a hearing on an application for con-

___

[1] At the time trial commenced on March 5, 1985, Practice Book § 31 provided in part: "Presentment of attorneys for misconduct not occurring in the actual presence of the court shall be made by written complaint of the grievance committee or of the state's attorney or of any member of the bar by direction of the court. Upon the filing of such complaint a rule to show cause shall issue to the defendant, who may make any proper answer within twenty days from the return of the rule, and shall have the right to be heard in his own defense and by witnesses and counsel. Unless otherwise ordered by the court, such complaints shall be prosecuted by a deputy assistant or assistant state's attorney within the chief state's attorney's office designated by the executive committee of the superior court to prosecute presentments, and shall be heard as soon as practicable. Upon such hearing the court shall make such lawful order as may to it seem just. Such complaints shall be proceeded with as civil actions."

servator, Graulty and the defendant were appointed co-conservators of the estate and co-conservators of the person of Donaghue. At the same time, the defendant was relieved of his duties as guardian ad litem and Attorney Paul Aparo was appointed to replace him.

Initially, the defendant's role as conservator was confined to managing the estate's assets and conducting an inventory of the real and personal property. The defendant, however, began a more active involvement in the daily management of Donaghue's affairs after receiving and investigating complaints about the mismanagement of her household. These investigations eventually led to Graulty's resignation as co-conservator of the person and the defendant's appointment as sole conservator of the person of Donaghue on May 21, 1979.

Thereafter, the defendant took steps to improve Donaghue's medical treatment, decrease her alcohol dependence, and improve her health. From May to December of 1979 there was a steady improvement in Donaghue's health. During this period, Donaghue also stated that she did not want her estate to pass as had been designated in her will which had been drafted by Graulty in 1978. Goldfarb believed Donaghue was in need of independent legal advice and retained Attorney Lester Snyder to advise Donaghue about her estate.

Attorney Snyder, after obtaining a medical opinion that Donaghue had testamentary capacity, reviewed her estate plan and, with the assistance of the law firm of Murtha, Cullina, Richter and Pinney, drafted a new will. Donaghue requested, without a suggestion from anyone, that Goldfarb be named coexecutor of the will. This was done and Donaghue executed her new will on December 21, 1979.

In May, 1983, the plaintiff grievance committee began an investigation into the conduct of the defendant in connection with matters relating to the Donaghue estate. After investigating the matter, the plaintiff initiated its presentment of the defendant to the Superior Court by complaint dated June 20, 1984. The complaint alleged that the defendant had been guilty of misconduct not occurring in the actual presence of the court involving his character, integrity and professional standing and conduct. It specifically alleged that the defendant, while acting as conservator of Donaghue, had caused to be prepared, or aided in the preparation of, an estate plan for Donaghue that provided for his acting as her executor and trustee with the further right to nominate his successor. The complaint further alleged that the defendant had no professional relationship with Donaghue before she was determined to be incompetent, and that the defendant's conduct was "a serious conflict of interest as both attorney and conservator giving the appearance of professional impropriety." The complaint, as amended on July 26, 1984, specified certain sections of the Code of Professional Responsibility as having been violated.[2]

An assistant state's attorney, pursuant to Practice Book § 31, represented the plaintiff when presenting the defendant to the Superior Court. On March 4, 1985, the day trial was to begin, the plaintiff sought to amend the complaint by adding violations of two disciplinary rules and expanding the scope of the inquiry to include the defendant's "overall conduct . . . prior to and including the time of his appointment as co-conservator of the estate of Ethel F. Donaghue."[3] The plaintiff

---

[2] The amended complaint alleged violations of Ethical Considerations 5-1, 5-2, 5-5, 5-6, 5-11 and Disciplinary Rule 5-101 (a).

[3] The first paragraph of the amended complaint provided:

"(1) The overall conduct of Attorney Alexander Goldfarb, as an officer of the court, prior to and including the time of his appointment as a co-

explained that the amendment was intended to cover the defendant's conduct "just prior to the time he was appointed conservator insofar as it related to his actually becoming appointed," but asserted "[t]hat's as far back we're going to go." The plaintiff stated further that the amendment "has nothing to do with conduct unrelated to the Ethel Donaghue estate." The defendant objected, claiming that the amendment lacked specificity, and further claiming that by the amendment the chief state's attorney's office was "attempting to usurp the authority of the grievance committee." The plaintiff asserted that it was within the inherent power of the court when investigating its officers to proceed without first exhausting the grievance procedure. The court, after hearing both counsel, denied the motion to amend, concluding that the plaintiff could not amend the complaint so as to exceed the allegations contained in the prior complaint of the grievance committee.[4]

Although we would normally review the trial court's denial of a motion to amend a complaint by determining whether the trial court abused its discretion; *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 488 (1983); *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980); we do not do so here

conservator of the Estate of Ethel F. Donaghue, violated the following sections of the Code of Professional Responsibility:
  (a) Ethical Consideration 5-1
  (b) Ethical Consideration 5-2
  (c) Ethical Consideration 5-5
  (d) Ethical Consideration 5-6
  (e) Ethical Consideration 5-11
  (f) Disciplinary Rule 5-101 (A)
  (g) Disciplinary Rule 1-102 (A) 4
  (h) Disciplinary Rule 1-102 (A) 6"

[4] The court concluded: "I'm going to deny the motion to amend, counselor. I don't see how we can go beyond the complaint of the grievance committee. I don't take any position on your right to go to the grievance committee with these new allegations. I make no decision in that regard whatsoever, because it's not before me."

because the issue of discretion was never reached by the trial court. The court did not decide the motion to amend on the grounds of surprise, delay, fairness to the opposing party, or any of the other factors that a trial court considers when determining whether to exercise its discretion to allow an amendment. *Beckman* v. *Jalich Homes, Inc.,* supra.[5] Instead, the court denied the motion on the ground that the plaintiff was limited to the allegations of the prior amended complaint and, if the plaintiff wanted to amend, it would be necessary to return first to the grievance committee. Accordingly, we turn to this issue.

The power to discipline an officer of the court " 'is a summary one inherent in the courts, and exists not to mete out punishment to an offender, but that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession.' " *In re Application of Courtney,* 162 Conn. 518, 523, 294 A.2d 569 (1972), quoting *In re Durant,* 80 Conn. 140, 147, 67 A. 497 (1907). "[T]he inquiry made is 'in the nature of an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit . . . .' " *In re Durant,* supra, 148; *Grievance Committee* v. *Nevas,* 139 Conn. 660, 665, 96 A.2d 802 (1953). "The complaint made, the court controls the situation

---

[5] Indeed, the court indicated that it would readily grant the defendant a continuance to remedy problems of surprise and delay. In response to counsel for the defendant's claims that the defendant would be denied due process if the court allowed the amended complaint, the court stated: "Well, you're not going to have any problem with that Mr. Skelley, if what you're looking for is a continuance or something of that kind to prepare for this amendment. You won't have any difficulty with that. If this amendment is new ground or causes you some surprise or difficulty with obtaining witnesses and that sort of thing, you're not going to have any difficulty there, if that's what you want. But what I want to know is should we allow the amendment at all?"

and procedure, in its discretion, as the interests of justice may seem to it to require. It may even act upon its own motion without complaint, and thus be the initiator of the proceedings." *State* v. *Peck,* 88 Conn. 447, 452, 91 A. 274 (1914).

This authority makes clear that the trial court has broad powers over both procedural and substantive aspects of attorney disciplinary proceedings. Furthermore, Practice Book § 31 makes it clear that the state's attorney, as well as the grievance committee, may "by written complaint" present attorneys for misconduct not occurring in the actual presence of the court. The trial court's conclusion was apparently based in part on the erroneous assumption that the state's attorney may only prosecute the grievance committee's complaint rather than present an attorney in its own right.[6] Practice Book § 31.

The defendant contends, however, that the trial court was correct in its ruling because of the interplay between General Statutes § 51-90 (b)[7] and Practice Book § 31. The defendant argues that because § 51-90 (b) assigns the grievance committee the power to "inquire into, investigate and present to the superior court" allegations of attorney misconduct, while the state's attorney's authority is to "present" attorneys under Practice Book § 31, the state's attorney is authorized to "present" an attorney only on matters that have been "inquired into" and "investigated"

---

[6] See footnote 8, infra.

[7] At the time of these proceedings, General Statutes (Rev. to 1983) § 51-90 (b) provided: "It shall be the duty of each committee to inquire into, investigate and present to the superior court offenses not occurring in the actual presence of the court involving the character, integrity, professional standing and conduct of members of the bar residing or practicing in its judicial district, and to investigate and present to the court any person deemed in contempt of court under section 51-88." This statute was substantially amended by Public Acts 1985, No. 85-456, § 1, effective July 1, 1986.

by the grievance committee. Here, because the proposed amendment covered some matters not investigated and recommended for presentment by the grievance committee (e.g., the defendant's conduct "prior to" his appointment as conservator), the defendant argues that the court was without authority to grant the amendment.[8]

The defendant's argument raises a potential separation of powers issue because of a possible conflict between a statute and a rule of court regarding the regulation of the practice of law. Cf. *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 145 Conn. 222, 232, 140 A.2d 863 (1958) (statute cannot control judiciary in regulating who may practice law). Formerly, there was some question as to whether grievance committees derived their investigatory powers from the legislature or the judiciary; see Practice Book, 1963, §§ 19 through 24 (rules of court silent as to investigatory powers of grievance committees); and at least one author

---

[8] The trial court reasoned similarly in denying the amendment. The court stated: "It seems to me, counselor, that the statute 51-90, particularly section (b), gives the duty to the Committee to inquire into, investigate and present to the superior court the offenses that we're talking about, the potential offenses. It's true Judge Ryan [in *In re Herman N. Horowitz*, 21 Conn. Sup. 363, 366, 154 A.2d 878 (1959)] talks about other people who can act, the court itself can act, but in that entire paragraph on 366 keeps saying, quote, the complaint made, the court controls the situation. The complaint made, the court controls the situation. It says that on a couple of particular parts here, and what we're talking about is a complaint made by the grievance committee. And so far as I know that's the only complaint we have. Now there may be other ways that this can be done. Some citizen may be able to do it, and as it indicates the court itself can initiate a proceedings, in effect make its own complaint. I think the court can certainly do that if it saw fit, if some dereliction came to its attention. But I don't see how the state's attorney's office, as you say, you're not a party, you're not a complainant, you're here to assist the grievance committee and assist the court in the presentation of this matter. But I don't see how you can amend the grievance committee's complaint, which is all we really have. In terms of an orderly process, it just doesn't seem appropriate to do it that way."

had questioned whether the investigative authority granted to grievance committees under General Statutes § 51-90 was an unconstitutional invasion of judicial power by the legislature. S. Miller, "Investigating the Grievance Committee," 34 Conn. B. J. 123, 126–29 (1960). Under the present rules of court, however, it is clear that the Superior Court has explicitly granted grievance committees the power to inquire into and investigate attorney misconduct; Practice Book § 27B;[9] and that the grant of investigatory authority in General Statutes § 51-90 does not actually conflict with our rules of practice.

The issue, therefore, is whether, under our rules of practice, the state's attorney may "present" an attorney on a matter that has not been first investigated by the grievance committee. While the Superior Court has the inherent power to discipline attorneys; *In re Application of Courtney,* supra, 523; the court has to some extent delegated that power to local grievance committees. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 525 n.15, 461 A.2d 938 (1983); Practice Book §§ 27B, 27F, and 31. Included in this delegation of authority is the power to investigate and inquire into allegations of attorney misconduct. Practice Book § 27B. The question is whether this delegation is intended to be an exclusive delegation, or whether the court, under its inherent disciplinary authority over officers of the court, retains jurisdiction

---

[9] At the time the Grievance Committee proceedings began against the defendant in May, 1983, Practice Book § 27B provided in part: "(b) In addition to any other powers and duties set forth in this Chapter, each local committee shall have the power and duty to:

"(1) On its own motion or on complaint of any person, *inquire into and investigate* offenses not occurring in the actual presence of the court involving the character, integrity, professional standing and conduct of members of the bar in this state." (Emphasis added.)

Subsequent amendments to this section have not altered the duty of grievance panels (successors to grievance committees) to "inquire into and investigate" attorney misconduct.

to investigate allegations of misconduct not investigated by the grievance committee.

The answer is provided by *State* v. *Peck,* supra, 456. In that case, the accused attorney challenged the power of the state's attorney to present him, claiming that under the predecessor to General Statutes § 51-90, only grievance committees could bring presentments, and that this statute prevailed over the court rule allowing presentments by the state's attorney. The court rejected the argument, finding that the statute "did not intend to provide an exclusive mode of instituting inquiries into the conduct of attorneys." The court explained: *"[I]t is quite apparent that neither the statute nor the rule, save as the latter comprehends most, if not all, practicable methods of procedure, undertakes to frame exclusive provisions. Each provides methods of procedure, but neither exclusive methods.* The courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. They may of their own initiative, and without complaint, set on foot inquiries as to professional conduct and fitness, or they may, in their discretion, entertain a complaint received from any source within or without the profession. Statute and rule provide orderly methods of procedure possessing the advantage of uniformity, thoroughness, and the promise of efficiency. But the power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. *Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct."* (Emphasis added; citation omitted.) Id., 457.

Under *State* v. *Peck,* supra, it is apparent that the rules of court do not provide exclusive methods for con-

ducting attorney discipline proceedings in the Superior Court. It was error, therefore, for the court to rule that the complaint in this case could not be amended to exceed the allegations made by the grievance committee. See also, *In re Herman N. Horowitz,* 21 Conn. Sup. 363, 154 A.2d 878 (1959).

While the court committed error, such error will not warrant reversal unless it is shown to be harmful. *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982). The burden of proving harmful error rests on the party asserting it. Id. "[T]he ultimate question is whether the erroneous action would likely affect the result." Id. The plaintiff claims that the error was harmful because it limited evidence considered by the court and led to incomplete findings of fact. Although the court's factual findings covered much of the subject matter of the proposed amended complaint, it made no finding with respect to the defendant's conduct "prior to" his appointment as conservator. More importantly, the court in its conclusions of law failed to address the expanded allegations of misconduct in the proposed amendment. For example, while the court found that the defendant had acted properly as conservator of the person of Donaghue, it made no conclusion whether the defendant had acted improperly as conservator of the estate because it found that the defendant was "not charged with any abuse of that position." In the proposed amendment, however, the defendant was charged with misconduct before and during "his appointment as co-conservator of the *estate*" of Donaghue. (Emphasis added.) Furthermore, the court did not address the claimed violations of the two additional disciplinary rules contained in the proposed amendment. We conclude that there was a substantial probability that the error of the court could have affected the result.

In response, the defendant has essentially argued that even if the court committed error in ruling that it could not amend the complaint to include matters not investigated by the grievance committee, such error was harmless because the court would have been obligated to deny the motion to amend in any event on due process grounds. The defendant claims that because the amended complaint only vaguely specified the charges against the defendant, it failed to provide the defendant with adequate notice of the charges against him. See *In re Ruffalo,* 390 U.S. 544, 550–52, 88 S. Ct. 1222, 20 L. Ed. 2d 117, reh. denied, 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874 (1968); *State* v. *Peck,* supra, 453.

Attorney disciplinary proceedings must afford the accused attorney due process of law. *In re Ruffalo,* supra; *In re Application of Courtney,* supra, 523. One component of due process is adequate notice to the accused of the charges against him. *In re Ruffalo,* supra. It is true that by adding a paragraph to the complaint that encompassed the defendant's conduct "prior to" and including his tenure as conservator for the Donaghue estate, the plaintiff could conceivably have expanded the scope of the investigation to include any conduct of the defendant while an attorney in this state. Such broad allegations would not provide the defendant with adequate notice of the specific charges which he was entitled to under the due process clause. *In re Ruffalo,* supra; see also *State* v. *Peck,* supra, 453; *Grievance Committee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 424–25, 23 A.2d 516 (1941). At trial, however, the state's attorney clarified that the amendment "has nothing to do with any conduct unrelated to the Ethel Donaghue estate. It has to do solely with his conduct just prior to the time he was appointed insofar as it related to his actually becoming appointed." A commonsense reading of the amendment supports this clarification. The trial court indicated that it could

"limit that prior business" and that it would also be willing to grant the defendant a continuance to prepare to respond to the added allegations. On the basis of this construction of the amendment and the willingness of the court to grant a continuance, we cannot say that the defendant would have been denied procedural due process had the court granted the amendment.

We offer a few final remarks to clarify the scope of our holding in this case. We are not holding that the trial court was obligated to grant the plaintiff's motion to amend here. This was a matter that was within the discretion of the court. The error of the trial court was its conclusion that the grievance committee mechanism robbed it of that discretion. Grievance committees (now grievance panels) obviously perform a necessary and valuable function by providing the courts with able and competent experts to investigate and evaluate claims of attorney misconduct. This delegation of power, however, is not a deprivation of power. The Superior Court retains inherent and plenary power to regulate and discipline its officers. It was error for the trial court to conclude that the grievance committee could diminish that power.

There is error, the judgment is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.