[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Petitioner filed its presentment of attorney for misconduct and petition for interim suspension on October 28, 5993 pursuant to Practice Book Section 28B.1 predicated upon Respondent's August 23, 1993 conviction in the United States District Court for the District of Connecticut of one count of violating 28 U.S.C. § 7206(1), subscribing to a false tax return. Upon conviction he was sentenced to a two-year period of probation with the special conditions that he pay the costs of prosecution, any sums due the Internal Revenue Service during his period of probation and to pay immediately a special assessment of $50.00. Each party filed a brief on December 7, 1993 on which date the Court heard oral arguments from the parties and testimony from the respondent. At the court's request petitioner filed a supplemental brief on December 13, 1993 and respondent filed his on December 21, 1993. Arguments of both counsel, oral and written, were helpful in a situation where the court must frame a remedy appropriate to the petitioner, the public, the respondent, his clients now and prospective, the court and the bar.
It is not the objective of the court in this proceeding to punish the respondent, but to preserve the courts "from the official administration of persons unfit to practice in them." Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 238. The court possesses the "inherent authority to regulate attorney conduct and to discipline members of the bar." Grievance Committee v. Goldfarb, 9 Conn. App. 464, 474. The court may impose sanctions of disbarment, a specified period of suspension or impose a reprimand. Other than the title of its petition "for interim suspension" the petitioner does not seek a specific remedy although its arguments indicate a CT Page 89 sharp divergence from respondent's request that "the court issue a reprimand and allow Attorney Shluger and his family to continue their lives."
In its consideration of an appropriate remedy this court does not find cases from this and other jurisdictions particularly helpful. Although thoughtful, each decision is based on a unique factual and testimonial scenario and thus offers limited guidance in the consideration of the case at hand. Many discuss at length the now dated concept of moral turpitude which appears more in the eye of the beholder than as an objective standard. Moral turpitude is not a standard in the Current Rules of Professional Conduct although pre-1986 it was embodied in the replaced Code of Professional Responsibility.
More useful are the Standards for Imposing Lawyer Sanctions (hereinafter, "Standards") adopted by the American Bar Association in 1986 and amended in February, 1992. The Standards are published in the ABA/BNA Lawyers' Manual on Professional Conduct. While the American Bar Association adopted only the black-letter standards as ABA policy, the commentary also offers guidance. Although the standards have not been adopted in Connecticut, neither side objects to their consideration and each uses them in argument.
In essence the Standards present a set of guidelines which help the court weigh many factors important to a resolution. They serve us a framework and help achieve a degree of consistency in the imposition of lawyer discipline necessary for fairness to the public and the bar. Within the framework it is useful to consider the following: (1) what ethical duty did the lawyer violate? (A duty to a client the public the legal system or the profession?); (2) what was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?); (3) what was the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?); and (4) are there aggravating or mitigating circumstances?
It is clear that respondent violated his ethical duty to the public, the legal system and the profession. The community expects lawyers to exhibit the highest standards CT Page 90 of honesty and integrity and they have a duty not to engage in conduct involving the commission of a crime (here a felony), dishonesty or fraud. Lawyers also owe a duty to the legal system. As an officer of the court respondent was required always to operate within the bounds of the law. In his duty to the legal profession an attorney must maintain the integrity of the profession.
In subscribing to a false tax return respondent acted intentionally and knowingly. He does not argue otherwise, i.e. that this was a negligent or unknowing event.
The court finds that respondent's activity did not create a serious or potentially serious injury.
Most of the evidence and legal arguments in the instant case concern the concept of aggravating or mitigating circumstances. Section 9.4 of the Standards sets forth factors which are neither aggravating nor mitigating. Among them are "forced or compelled restitution." Respondent's payment of the sentencing court's imposition of costs of prosecution, a special assessment and any sums due the Internal Revenue Service fall within this category.
Respondent presents evidence which certainly redounds to his credit as a citizen and member of the bar. He was the Law Day Committee Chairperson for the Hartford County Bar Association for a number of years. In this role he coordinated courthouse ceremonies and helped staff a legal clinic booth at the Hartford Civic Center. He also participated in the pro bono referral project of Neighborhood Legal Services, aided the Youth and Family Resource Center of Glastonbury, the Salvation Army and the Red Cross Blood Program. He has also submitted testimonial letters, one from a Senior U.S. Probation Officer who indicated his cooperation and recommended that "it is this officer's hope that the Grievance Committee rules favorably for Mr. Shluger."
Also, respondent claims that his crime was impelled by economic and job related stress. He was admitted to the Connecticut Bar in November 1981 and worked for the same attorney from that time until he falsely subscribed to his 1988 federal income tax return and for some time CT Page 91 thereafter. Respondent was paid a weekly salary in cash from which there was no withholding for taxes or FICA because it was falsely claimed by his employer that respondent was an independent contractor rather than an employee. Respondent was paid about $550.00 per week plus fifty percent of fees which he produced for the firm from his clients rather than those of his employer. He was married at the time but his two children were not yet born. It is unknown whether his wife had any income. They lived in a relatively small condominium. Pressures were created in part because their life style was in contrast to "two other lawyers in that same firm who were quite rich, had beautiful homes. Money was never an object for them, and, me, it was just the opposite." (Respondent's testimony, Tr. p. 10).
Mitigating circumstances under the Standards (Section9-32) which are found to apply in this case are: (1) personal or emotional problems, (2) character or reputation, (3) imposition of other penalties or sanctions, and (4) remorse.
Although perhaps self-imposed pressure for a more affluent life style ordinarily would not seem to satisfy the standard of "personal or emotional problems" the court is willing to stretch the standard because of the additional factor of an unsavory work environment created by an employer, since convicted, who the was target of a federal investigation albeit at a time apparently subsequent to the respondent's filing of his 1988 federal income tax return.
From the documents submitted, and as indicated previously, the court is convinced that respondent enjoyed a good reputation in the community and at the bar.
The respondent demonstrated remorse during his testimony.
In this weighing process the scales tip as they become weighed by aggravating factors. At a time respondent admitted his actions and provided his full cooperation, including providing appropriate business records, during the I.R.S. investigation, but this was only after his initial denial of any wrongdoing in the early stages of the CT Page 92 investigation.
The respondent did not commit a crime of omission or act negligently. It is found here, as it was in the United States District Court, that he acted intentionally and knowingly. The amount of income reported in 1988 was $22,782 "whereas he then and there well knew and believed that he had taxable income in the approximate amount of $76,398." (Information to which respondent pleaded guilty)
The crime was committed for a dishonest or selfish motive. (See Standards Section 9.22(b). Respondent hid over $50,000 in income. This was done so that he could enjoy a nicer life style. The facts that his associates were rich and had larger homes do not dilute his dishonesty or selfishness.
Of deep concern to this court is respondent's pattern of misconduct. (See Standards Section 9.22). During his direct testimony respondent referred to the false reporting of his 1988 income as "one act" (Tr. p. 10 and p. 19) and that "I firmly and confidently feel that other than this one isolated act of very poor judgment five years ago, I have always maintained a high degree of trustworthiness as an attorney with honesty and integrity." (Tr. p. 18). He further testified that "I've learned that this, certainly, was a matter of one isolated, very poor judgment that I know never could be repeated by me." (Tr. p. 22). However, during cross-examination he admitted that he also filed an income tax return for 1986 which falsely reported his income.
Also troubling are respondent's prior disciplinary offenses. (See Standards 9.22(a). He was reprimanded by the Statewide Grievance Committee in 1985 and again in 1987.
Respondent continues to practice law. His term of probation terminates on August 23 1995. In Statewide Grievance Committee v. Donnarumma, 1993 WL 76348 (Conn.Super.), the respondent, who had ceased practicing, was suspended from practice for a period concurrent with his Federal Court probationary supervision which was for one year after serving seven months. Respondent here argues that such a result would be too harsh and that he should be CT Page 93 reprimanded.
A reprimand in the instant case would not adequately protect the public and the administration of justice from an attorney who is unlikely properly to discharge his professional duties to clients, the public, the legal system, and the legal profession. He has been reprimanded twice previously. He is convicted of a serious crime and admits to a like violation for which he was not charged.
The respondent is accordingly suspended from the practice of law for a period of three years commencing on February 15, 1994.
The court will appoint attorneys pursuant to Practice Book Section 46B.
Langenbach, J.