[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a complaint in two counts, the first count seeking a declaratory judgment as to whether the Statewide Grievance Committee ("Committee") has jurisdiction to discipline or propose sanctions against the plaintiff, John M. Massameno, a senior assistant states attorney, for violations of certain of the Rules of Professional Conduct allegedly committed while he was prosecuting a criminal case. In the second count, plaintiff seeks to enjoin the Committee from conducting a hearing on the alleged rule violations on the ground that it lacks jurisdiction.
Richard Palmer, then Chief States Attorney for the State of Connecticut, was granted permission to join the action as an interested party. Hearings before this court were held on November 20 and December 23, 1992 and January 22, 1993, at which evidence was taken on the sole issue of the nature of the impact that disciplinary proceedings by the Committee would have on the ability of a states attorney to function as such. Memoranda of law were subsequently filed by the parties.
On December 23, 1992, the parties entered in to a stipulation of facts. From this stipulation it appears that several grievance complaints before the committee are CT Page 1190 pending against the plaintiff on which the Committee was in the process of scheduling hearings, when the present action seeking an injunction and a declaratory judgment was instituted.
The complaints against plaintiff arose out of a criminal proceeding instituted by him in his capacity as states attorney in which Dr. James Zamstein was charged with sexually molesting his two minor children and was acquitted, after court trial, on November 26, 1991. Shortly after the conclusion of this trial, grievance complaints were filed against the plaintiff alleging that he had violated several rules of professional conduct in his investigation and presentation of the criminal case, by Gerald Roisman, attorney for Dr. Zamstein and Mark Swerdoff, attorney for Mrs. Zamstein, in the then currently pending dissolution of marriage action, and by Charles Zamstein, brother of Dr. Zamstein.
In April, 1992, the grievance panel for the Hartford/New Britain Judicial District found probable cause under the Swerdoff grievance complaint that plaintiff had violated Rule 4.2 of the Rules of Professional Conduct, but found no probable cause that any rule had been violated under the Roisman or Charles Zamstein complaints. In August, 1992, the Statewide Grievance Committee reviewed the Roisman and Charles Zamstein complaints and found that there was probable cause that plaintiff had violated Rules 3.4(c), 3.5(c) 3.8(a), 4.4 and 8.4(d) under these complaints. The Committee also scheduled a hearing on the alleged violation of Rule 4.2 under the Swerdloff complaint. The Chief State's attorney has intervened in all three grievance complaints and moved to dismiss them on the ground that the Committee lacks jurisdiction.
After the commencement of this action, proceedings on these various grievance complaints were stayed pending the decisions in this case.
-I-
The central question in this case is whether the Committee as an agency of the Judicial Department has jurisdiction to investigate and dispute a prosecutor for a breach of the Rules of Professional Conduct occurring CT Page 1191 during the exercise of a prosecutorial function.
Plaintiff claims that the discipline of a prosecutor exercising a prosecutorial function is exclusively reserved to the Division of Criminal Justice by the statutes set forth in Chapter 886, General Statutes (51-275 to 51-288) and by the constitutional requirement of separation of powers as set forth in Article II of the Connecticut Constitution, because Amendment XXIII establishes the Division of Criminal Justice, including all States attorneys within the Executive Department of government.
In addition to the general claim that the separation of powers mandated by the Constitution prohibits any interference with prosecutors carrying out their functions by any agency of the Judicial Department, the plaintiff and the intervenor-plaintiff expressly claim that any discipline imposed by the Committee for unethical conduct would constitute such interference, have a "chilling effect" on prosecutors in carrying out their duties, and subject them to inconsistent and duplicative standards and sanctions in view of the disciplinary powers exercisable by the Criminal Justice Commission.
-II-
Article Fifth, Section 1, as amended by Article XX, Section 1 of the Connecticut State Constitution provides that "[t]he judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish." Pursuant to its constitutional powers, the judicial Department has the inherent authority to admit attorneys to the bar and regulate the conduct of those attorneys once admitted. Fairfield Bar Committee v. Esterman, 174 Conn. 548 (1978); Heiberger v. Clark, 148 Conn. 177, (1961). In Heiberger, the Supreme Court stated at page 185 "Fixing the qualifications for as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power."
It is the unique position of attorneys as officers and commissioners of the superior court which casts them in a special relationship with the judiciary and subjects them CT Page 1192 to its discipline Heslin v. Connecticut Law Clinic of Trantolo and Trantolo, 190 Conn. 510, 524 (1983). The Superior Court has the inherent power to discipline attorneys Grievance Committee v. Goldfarb, 9 Conn. App. 464,473, cert. denied, 203 Conn. 802 (1987).
In order to fulfill its constitutional functions regarding the regulation of attorney conduct, the judges of the Superior Court have the power to establish rules relative to the admission, qualifications, practice and removal of attorneys. State Bar Association of Connecticut. v. Connecticut Bank Trust Co., 145 Conn. 222, 232 (1958); In re Appeal of Dattilo, 136 Conn. 488, 492 (1950). Under its rule making authority the court has promulgated the Rules of Professional Conduct to govern the ethical conduct of attorneys and partially delegated its authority to enforce the Rules to the Committee as an arm of the court pursuant to Sections 27B, et. seq. of the Connecticut Practice Book. Sobocinsky v. Statewide Grievance Committee, 215 Conn. 517, 526 (1990); Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 239 (1989). Grievance Committee v. Goldfarb, supra.
Disciplinary proceedings are undertaken in order to protect the courts from the official services of persons unfit to practice in them. Heiberger, Clark, supra; In re Peck, 88 Conn. 447, 452 (1924). In In re Peck our Supreme Court rejected a claim by a probate judge charged with misconduct in the performance of his judicial office, that he could not be disciplined for such misconduct stating at p. 450:
 An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him.
-III-
Prior to the adoption of Constitutional Amendment XXIII on November 28, 1984, the Division of Criminal CT Page 1193 Justice which was in charge of the investigation and prosecution of all criminal matters was within the Judicial Department and states attorneys were appointed by the Judges of the Superior Court. See former Secs. 51-276, 51-278, Conn. Gen. Statutes. With the enactment of Amendment XXIII and Public Act 84-406, which became effective on November 28, 1984, the Division of Criminal Justice was established within the Executive Department and appointment of states attorney was removed from the Judiciary and vested in a newly established Criminal Justice Commission nominated by the governor and appointed by the general assembly. Amendment XXIII; Secs. 51-275a, 51-276, 51-278, Conn. Gen. Stats.
The plaintiffs claim that retention by the Judicial Department of the discipline of attorneys who are states attorneys, while they are exercising prosecutorial functions would so interfere with their duties as to intrude on the constitutional functions of the Division of Criminal Justice. They do not challenge the authority of the Judicial branch to admit or disbar attorneys who happen to be states attorneys, or to otherwise discipline states attorneys for ethical violations committed not in the exercise of prosecutorial functions. However, they urge that any attempt to subject a states attorney to a grievance commission proceeding for an ethical violation committed during his prosecutorial function is a failure to "acknowledge the gravity and legitimacy of the executive powers exercised only by the prosecutors of this state".
The emphasis which plaintiffs place on the separation of powers of the judicial and executive departments as a fundamental reason for relinquishment by the judiciary of the discipline of attorneys who are serving as states attorneys is misplaced. The separation of powers doctrine, "cannot always be rigidly applied" and the grant of judicial power "cannot constitute an exclusive grant of every activity in which courts may engage." State v. Clements, 166 Conn. at 510. As the Connecticut Supreme Court stated in In re Application of Clark, 65 Conn. 17, 38
(1984):
 [T]he great functions of government are not divided in any such way that all acts of the nature of the CT Page 1194 functions of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. Executive, legislative, and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department.
The lines of separation are not so sharp or segregated, either historically or constitutionally, as to justify a claim that either the executive or judicial branches should enjoy total control over regulation of prosecutorial conduct. Indeed one authority on legal ethics in discussing the discipline of prosecutors has observed that all three branches of government may have legitimate concerns in such discipline.:
 Separation of powers cannot sensibly be a doctrine of two-dimensional, single-directional lines. The three branches of government necessarily interact with each other in a multitude of ways. Clearly the regulation of lawyers strongly involves the traditional legislative concerns with the peace, safety and welfare of citizens and can involve matters of constitutionally legitimate concern to the executive branch as well (as to the judicial branch).
Wolfram, Modern Legal Ethics, West Publishing Co. (1986) p. 30.
The plaintiffs and plaintiff-intervenors have cited a number of Connecticut cases which contain language discouraging the undue intrusion by one branch of government upon another, e.g. Stollberg v. Caldwell,175 Conn. 586 (1978); Pellegrino v. O'Neill, 193 Conn. 670
(1984); Adams v. Rubinow, 157 Conn. 150 (1968). Close examination of these decisions discloses little that bears on the claim of Judicial Department intrusion in this case.
We find nothing in the language of Article II of the Connecticut Constitution of Constitutional Amendment XXIII CT Page 1195 which would remove or inhibit the discipline of attorneys, who are acting as prosecutors, from control of the Judicial Department, or its grievance committee to enforce the Rules of Professional Ethics.
-IV-
Plaintiffs and Plaintiff-intervenors argue that the Legislature by enacting Public Act 84-406 which removed the Division of Criminal Justice from the Judicial Department to the Executive Department and provided for the removal and discipline of states attorneys by the Criminal Justice Commission (also made part of the Executive Department; see51-278b) intended to remove states attorneys from the discipline of the judicial Department.
The plaintiffs focus on 51-278b(c) which as enacted in Public Act 84-406 provides:
 (c) The criminal justice commission may discipline for just cause after due notice and hearing by reprimand, demotion or suspension with or without pay from his office up to fifteen days, a deputy chief state's attorney or state's attorney. A recommendation for discipline may be initiated by the chief state's attorney. The chief state's attorney may discipline any assistant state's attorney or deputy assistant state's attorney who assists him or the appropriate state's attorney or deputy assistant state's attorney who assists him, for just cause after due notice and hearing by reprimand, demotion or suspension with or without pay from his office up to fifteen days.
We have examined the legislative history associated with the Constitutional amendment and Public Act 84-406 and while there are several discussions which mention the disciplinary functions of prosecutors conferred upon the Commission there is nothing which we have examined or brought to our attention which would indicate an intent to CT Page 1196 remove the traditional control of the judiciary over the ethical conduct of attorneys. The legislative history of the constitutional amendment indicates that the primary purpose of the amendment was to take the appointment power of states attorneys away from the judiciary and place it in the Executive Department in order to avoid any appearance of impropriety and to make states attorneys more accountable to the public. 27 H.R. Proc. PT. 12, 1984 Sess. p. 4312; Conn. Joint Standing Committee Hearings Judiciary, Pt. 2 1984 Sess. p. 362.
The statute creates within the Commission an independent system of disciplining states attorneys for "just cause". This system was amplified by a collective bargaining agreement approved by the General Assembly which delegated certain disciplinary powers of the Commission to the Chief States Attorney.
The collective bargaining agreement provides four categories of discipline, ranging from "serious" down to "preventive", defined primarily in terms of the sanctions or penalties to be imposed. Imposition of discipline must be for "just cause and the only violation by a states attorney referred to is `misconduct'". Various categories of discipline are appealable, arbitrable, or subject to labor grievance procedure as set forth in various provisions.
 V
Plaintiffs claim that it is unfair and burdensome for states attorneys to be subject to both the disciplinary procedure described in the Collective Bargaining Agreement under the Civil Justice Commission and the grievance procedure of the Statewide Grievance Committee for the same violation. Undoubtedly that possibility exists. We do not view that possible burden as being sufficient reason to exempt that prosecutor from possible discipline as an attorney and commissioner of the superior court under the ethical rules applicable to all other attorneys as set forth in the Rules of Professional Conduct. Those rules, obviously, cover a great many more ethical requirements than would be imposed under the "misconduct" or "just cause" standards set forth in the Collective Bargaining agreement. Those rules deal with conduct of a violator as CT Page 1197 an attorney; the discipline imposed under the Collective Bargaining Agreement relates to his conduct as a prosecutor.
As a key and powerful functionary in the American criminal justice system, the prosecutor holds the power to invoke or deny punishment. See, e.g. Vorenberg, Decent Restraint of Prosecutorial Power, 94. Harv. L. Rev. 1521, 1555 (1981). We find nothing basically wrong in a prosecutor being subject to the discipline of his own employment division as well as to the ethical strictures of the Rules of Professional Conduct with respect to his conduct as an attorney. No one has suggested that because superior court judges are subject to discipline by the Judicial Review Council for violations of the Code of Judicial Conduct, they are not subject to discipline by the Grievance Committee for violations of the Rules of Professional Conduct as respects their underlying capacities as attorneys and commissioners of the Superior Court.
-VI-
Plaintiffs argue, however, that since states attorneys are required to be attorneys admitted to practice, judicial discipline which would lead to suspension or disbarment is in effect, an exercise of the power to remove a States attorney from office. They cite cases including Adams v. Rubinow, 157 Conn. 150 (1968) to support this claim that such exercise of power would be unconstitutional.
In Adams our Supreme Court held that the portion of the 1967 Public Act giving the Chief Court Administrator the power to suspend a probate judge from office was unconstitutional because it violated specific constitutional provisions providing for a four year term of office for probate judges. That case did not involve or diminish the power of the Judicial Department to suspend a law license.
Several cases from other jurisdictions have been cited which have held that an attorney general as a public prosecutor is immune from attorney disciplinary proceedings during his term of office e.g. Simpson v. Alabama State Bar294 Ala. 52, 311 So.2d 307 (1975). Bowers v. State Bar CT Page 1198 of Georgia, Superior Court of DeKalb County, State of Georgia, File No. 87-9032-2. These case have been characterized as a "distinctly minority view", as against the general rule that "prosecutors are almost invariably lawyers and, as such, are fully subject to the lawyers codes". See e.g. Wolfram , Modern Legal Ethics, 13.10.2, esp. n. 42. (numerous citations omitted); B. Gershman, Prosecutorial Misconduct (1985) 13.6. In the Matter of John Doe, 801 F. Sup. 278 (D.N.M. 1992) the federal district court, in holding that state ethical rules apply to federal prosecutors who can be disciplined by state disciplinary boards, noted "In short, the ethical rules clearly apply to government lawyers and the courts and disciplinary authorities have not hesitated to discipline government lawyers who violate these rules". A number of state court decisions in other states have affirmed the propriety of conducting judicial disciplinary proceedings against attorneys for acts of misconduct committed in connection with their prosecutorial duties. Price v. State Bar, 30 Cal. 3rd 537, 638 P.2d 1311 (1982); In re Disciplinary Proceedings Against Murch, 107 Wis.2d 557,319 N.W.2d 877 (1982); Re Conduct of Burros, 291 Or. 135,269 P.2d 820 (1981) In re Friedman, 76 Ill.2d 392,392 N.E.2d 1333 (1979) In re Weishoff, 75 N.J. 326,383 A.2d 632 (1978). In at least California and New Jersey, the state constitutions placed the power to appoint and supervise prosecutors in a branch of governmental other than the Judicial. See, Cal Const. Art. V, secs. 1, 4 and 13; N.J. Const. Art VII, Sec. 2, par. 1.
-VII-
Plaintiffs and plaintiff intervenors have claimed that the filing of disciplinary proceedings for ethics violations would have a "chilling effect" on prosecutors while carrying out their constitutional and statutory duties. This court permitted evidence to be introduced to prove this claim but found the evidence it heard to be less than persuasive.
It was argued that subjection to grievance committee disciplinary procedures had a stressful effect on a prosecutor and impinged on his discretion and freedom because he would feel threatened with sanctions if the court or opposing counsel did not agree with his CT Page 1199 prosecutorial decisions. Plaintiff claimed that the procedure in this case was stressful to him because of the time and paper work needed to address the complaints; that the charges became public and attracted media attention; that such publicity reduced his standing and effectiveness in other cases, particularly in dealing with defense counsel. It was claimed that grievance committee panels would not necessarily have members familiar with the duties and traditional prerogatives of a prosecutor, in contrast to the discipline proceedings administered by the Criminal Justice Commission.
There was little empirical evidence to bear out the validity of these claims. The chief states attorney testified that to his knowledge less than fifty complaints had been made against states attorneys in Connecticut during the previous six years most of which were frivolous or dealt with by his office. Only one complaint had resulted in any kind of discipline and that was in a proceeding before the Criminal Justice Commission.
There is no reason to believe that in complaints involving states attorneys that there will not be sufficient knowledge of legitimate prosecutorial functions, both among the panels and the Statewide Grievance Committee, so as to endanger the fairness of a hearing or recommendation. Practice Book Sec. 27B provides that two of the three member grievance panels shall be attorneys and one shall be a non attorney. Practice Book Sec. 27g provides that at least four members of the fifteen member Statewide Grievance Committee shall be non attorneys. It is true that our supreme court ruled in Levinson v. Board of Chiropractor Examiners, 211 Conn. 508 (1989) that an administrative board must have expert testimony on the standards of professional conduct unless the Board that hears the matter itself consists of a majority of experts. But in the recent case In re Zoarski, 227 Conn. 789 (1993), a case involving discipline of a judge, our supreme court held that Levinson did not require the Judicial Review Council to receive expert testimony stating "It is reasonable to expect lawyers to have a special understanding of the ethical standards that govern judges" p. 794. We are confident that lawyers sitting on grievance panels and the Statewide Grievance Committee will have an adequate understanding of the special discretion CT Page 1200 exercisable by states attorneys in their prosecutorial functions. Moreover, where it appears that a particular panel lacks such understanding, there is nothing to prevent the panel, or the subject states attorney from calling an expert witness. If In re Zoarski, lawyers on the Judicial Review Council were considered capable of interpreting the Code of Judicial Conduct; it would appear a fortiori that lawyers on grievance panels would be capable of interpreting their own Rules of Professional Conduct.
Finally, as the court in In re Zoarski noted that the "court's searching review of a finding of judicial misconduct assures the application of proper standards in any particular case". Likewise, there is every reason to believe a similar "searching review" takes place in every grievance proceeding involving an attorney. Earlier this year Judge Norko in reversing the decision of the Statewide Grievance Committee in reprimanding an attorney for failing to act with reasonable diligence in a habeas corpus proceeding, criticized the makeup of the three person panel consisting of two laymen and an attorney, none of whom were familiar with criminal proceedings. Wenc. v. Statewide Grievance Committee, Superior Court for Judicial District of Hartford, New Britain No. CV 92-703470 (April 26, 1993) Norko, J.
It is evident that the initiation of any disciplinary proceeding against a prosecutor, either by a judicially controlled grievance panel or by the Criminal Justice Commission, or their delegated agents, is unpleasant, stressful attention-diverting and time-consuming to the affected prosecutor. So would it be to any judge, public defender or attorney facing a grievance procedure.
Plaintiff claims that a grievance filed while the case in which it arose is pending can affect the procedure and even the outcome of the case. Indeed it can. That is why it is generally considered the better practice not to institute such proceedings while the case, in which the conduct complained of took place, is still pending. In misconduct occurring before a judge it is the accepted practice to avoid filing a grievance until the case is over. The array of witnesses testifying for the plaintiff before this court could recall few instances when a complaint was instituted against a prosecutor while the CT Page 1201 subject case was still pending. In the instant case, no complaints were filed while the criminal cases were pending.
Leading commentators have noted a marked reluctance on the part of disciplinary agencies and courts to invoke their powers against prosecutors, particularly while they are exercising their discretionary decisions, e.g. Rosen, Disciplinary Sanctions Against Prosecutors for "Brady" Violations: A Paper Tiger, 65 N.C.L. Rev. 693 (1987); Gershman, Prosecutorial Misconduct C. Boardman (1985) 13.6; Wolfram, Modern Legal Ethics supra p. 761. A Goldstein, The Passive Judiciary: Prosecutorial Discretion and the Quiet Plea, Louisiana State University Press (1981) p. 4. Indeed, these commentators have criticized bar associations and courts for exhibiting a reluctance to initiate and impose sanctions on prosecutors even to curb illegal conduct. In the country as a whole, the problem seems to be the paucity of grievances being filed against prosecutors rather than an excess of such filings.
But, as we have noted previously, plaintiffs do not claim that prosecutors, who are attorneys, should be altogether immune from discipline under the Rules of Professional Conduct as a whole but only where their functions as prosecutors are concerned. This distinction is repudiated by the Rules themselves which contain specific provisions which apply to prosecutors, e.g. Rule 3.8. Moreover, we believe that there would be great difficulty in drawing a bright line between the "prosecutorial function" and other actions of a prosecutor as an attorney.
Such a distinction does not appear for example, in the American Bar Association Standards Relating to the Administration of Criminal Justice (Chapter 3. The Prosecutorial Function). See Selected Statutes, Rules and Standards of the Legal Profession, West, 1993 edition. pp. 525-541. We have noted that the danger of "chilling" states attorneys from exercising proper prosecutorial discretion by continued application of the Rules of Professional Conduct seems to be minimal. States attorneys have the duty and responsibility of exercising such discretion, and so long as this exercise is fairly made, public policy would be ill served if the courts permitted CT Page 1202 interference with such discretion by the bringing of unwarranted grievance proceedings. It has been noted that the Committee regularly refers complaints which it receives against judges to the Judicial Review Council, not only because that body has the statutory and constitutional power to enforce the judicial code, but as a matter of comity with respect to possible violations of the Rules of Professional Conduct. The development of procedural comity between the Statewide Grievance Committee and the Criminal Justice Commission in addressing complaints falling within the broad category of prosecutorial function might further reduce the possibility of unwarranted or duplicative proceedings.
We have made no effort to examine the merits of the specific Rules violations now pending against the plaintiff, but that issue was not raised in this complaint.
For the above reasons and because we hold that the Statewide Grievance Committee has jurisdiction to consider the violation pending against the plaintiff, plaintiff's claim for a declaratory judgment holding that the Committee has no jurisdiction to discipline the plaintiff and further seeking injunctive relief is denied.
Wagner, J.