THE STATE OF CONNECTICUT *vs.* CHARLES H. PECK
(IN RE DISBARMENT OF CHARLES H. PECK).

Third Judicial District, New Haven, June Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Any misconduct, whether professional or otherwise, which discloses one's moral unfitness to be longer permitted to practice as an attorney at law, is a sufficient ground or reason for his disbarment.

Misconduct of a member of the bar in obtaining a fee from an estate in settlement before him as a Court of Probate, for pretended services rendered to it as an attorney at law, directly involves a misuse of his professional privilege and indicates a moral unfitness for the further practice of his calling.

The disbarment of an attorney at law who happens to be a judge of probate also, does not affect his judicial status.

Disbarment proceedings are neither criminal prosecutions nor civil

actions, but mere inquiries or investigations undertaken for the purpose of preserving courts of justice from the official ministration of persons unfit to practice in them; and therefore a complaint alleging misconduct need not be characterized by the same precision of statement or conformity to the recognized formalities or technicalities of pleading which are expected in criminal or in civil cases.

The one supreme requisite of a complaint in disbarment proceedings is that it be sufficiently intelligible and informing to advise the court and the accused attorney of the nature of the charges, so that the court may determine whether or not it will institute an inquiry, and, if one is ordered, properly conduct it, and that the attorney may prepare to meet the charges if the inquiry be made.

In the present case the complaint, which was filed by the State's Attorney, alleged that the respondent obtained $750 from an estate which was in settlement in the Court of Probate of which he was the judge, by falsely pretending that he had rendered services to such estate as an attorney at law, and by making use of his official position to coerce the parties beneficially interested in the estate and forcing them to consent to such payment. *Held* that these charges, although perhaps inartificially expressed, clearly indicated such misconduct upon the part of the respondent as unfitted him to continue in the practice of his profession, and fully warranted the court in calling upon him to answer the charges and in making an investigation of their truth.

With respect to the method of presenting misconduct to the court, neither the statute (Public Acts of 1907, chapter 120, § 1) nor the rule of court (Practice Book, 1908, p. 206, § 10) undertakes to frame exclusive provisions, but leaves the court free to act in each case as it may deem best. The court may of its own initiative, and without complaint, set on foot inquiries as to professional conduct and fitness, or it may in its discretion entertain a complaint received from any source within or without the profession.

In the present case the respondent pleaded in abatement that the State's Attorney who filed the presentment—but who was thereupon succeeded by impartial counsel appointed by the court—was actuated by personal hatred and enmity against the respondent which rendered him incapable of acting fairly and impartially. *Held* that the State's Attorney had no power to direct or control the proceeding, the conduct of which rested entirely with the court whose duty it was to see—as it did in the present instance—that the interests of justice were preserved and the rights of the respondent protected; and that the respondent therefore had no just cause of complaint upon this ground.

The respondent contended that some of the facts found lay outside the allegations of the complaint. *Held* that although this might be true in respect to some features of the finding, their recital was

merely incidental to the story set forth in the complaint, and the trial court had been careful to rest its judgment of disbarment upon matters clearly within the written charges.

Whether this court has jurisdiction to review the evidence in disbarment proceedings in order to ascertain whether it supports the findings and conclusions of the trial court as to the respondent's misconduct, *quære*.

If such jurisdiction be assumed to exist, the evidence in the present case *held* to fully justify the conclusions upon which the judgment of the lower court was based.

In determining whether an attorney at law is a fit person to be longer allowed to practice, a large measure of judicial discretion is to be exercised, not arbitrarily, impulsively, or under the influence of hatred or prejudice, but reasonably, fairly and dispassionately.

An attorney at law charged with misconduct is entitled to notice thereof and an opportunity to be heard, to a fair and impartial investigation, and to a reasonable exercise of the judicial discretion.

Argued June 5th—decided July 13th, 1914.

COMPLAINT for alleged professional misconduct by the defendant as an attorney at law, brought to and tried by the Superior Court in Fairfield County, *Bennett, J.;* facts found and judgment rendered suspending the defendant from practicing law in the courts of this State indefinitely, from which he appealed. *No error*.

*Robert E. DeForest*, for the appellant (defendant).

*J. Moss Ives*, Special State's Attorney, for the appellee (plaintiff).

PRENTICE, C. J. The acts, which in the complaint are charged as misconduct calling for the respondent's disbarment, and for which, as appears by the judgment-file, he was disbarred, were all done by him in the course of the settlement of an estate of a deceased person in the Court of Probate over which he presided. The misconduct alleged, and made the basis of the judgment,

was misconduct connected with the performance of his judicial office. The claim made upon demurrer to the complaint, and renewed at the hearing, that such misconduct was not misconduct as a member of the bar, and, therefore, not of a kind to justify discipline as such member, is, for a double reason, wholly without foundation. In the first place it did directly involve a misuse of the professional privilege. In the second it disclosed a moral unfitness for the enjoyment of that privilege, and it matters not whether the disclosure came through professional channels or not.

An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy. Unfortunately it is not easy to limit membership in the profession to those who satisfy the standard test of fitness. But scant progress in that direction can be hoped for if, in the determination of the qualification of professional fitness, nonprofessional dishonor and dishonesty in whatsoever path of life is to be ignored. Professional honesty and honor are not to be expected as the accompaniment of dishonesty and dishonor in

other relations. So it is that we, in common with other courts, hold, as did Lord Mansfield more than a century ago, that misconduct, indicative of moral unfitness for the profession, whether it be professional or nonprofessional, justifies dismissal as well as exclusion from the bar. *In re Durant*, 80 Conn. 140, 147, 67 Atl. 497; *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 17, 22 Atl. 441; *Ex parte Brounsall*, 2 Cowp. 829; *Boston Bar Asso.* v. *Greenhood*, 168 Mass. 169, 183, 46 N. E. 568; *Penobscot Bar* v. *Kimball*, 64 Me. 140, 148; *Delano's Case*, 58 N. H. 5; *In re Percy*, 36 N. Y. 651, 654.

The demurrer suggests in this connection that disbarment proceedings so far partake of the character of official impeachment that they are not to be permitted in the case of a judicial officer. This objection is not well taken. Since a judge of probate need not be an attorney, his disbarment can have no effect upon his official status. The courts cannot be held responsible for the character of elective officers, but they can and ought to be for the fitness of those who enjoy the privileges of the legal profession under their authority and sanction.

The demurrer asserts, further, that the complaint addressed to the court fails to set out misconduct, either professional or judicial, on the part of the accused. This general charge is elaborated by reference to specified disassociated allegations, of each of which it is said that it does not charge misconduct. The complaint, however, is to be looked at as a whole, and the question of sufficiency attempted to be presented by the demurrer must be determined upon the result of such an examination. The demurrer, and counsel's argument in support of it, proceed upon the assumption, or rather assertion, that the same tests are to be applied to a charge of misconduct on the part of an attorney, addressed to a court for investigation and appropriate

action, as to a complaint in a civil suit between parties.

This assumption mistakes the true character of a complaint of the former sort. It has been contended in other jurisdictions that disbarment proceedings partake of the nature of criminal prosecutions, and, accordingly, require an observance in the preparation of complaints of the formalities and technicalities prevailing in such procedure. This contention, however, has not met with other than occasional approval by the courts. The most have made emphatic and sound reply that the proceeding was in no sense criminal, but one undertaken "for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them." *Ex parte Wall*, 107 U. S. 265, 288, 2 Sup. Ct. Rep. 569; *Penobscot Bar* v. *Kimball*, 64 Me. 140, 147; *Boston Bar Asso.* v. *Greenhood*, 168 Mass. 169, 183, 46 N. E. 568; *In re Bowman*, 7 Mo. App. 567.

Neither are they civil actions. A civil action is one between parties. Here, an attorney is called to answer to the court of his appointment for his conduct as an officer of that court. The inquiry is directed solely to his continued fitness. There is no plaintiff. The State is not a party, as would appear by the title mistakenly given upon the record, to these proceedings. No person is a plaintiff. There may be, indeed, as in this case there is, one who has called the court's attention to alleged misconduct, but he is in no sense a party, and has no interest in the outcome save as all good citizens or worthy members of the bar may have. The complaint made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. It may even act upon its own motion without complaint, and thus be the initiator of proceedings. "It [the hearing] was an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit." *Fairfield County Bar*

v. *Taylor*, 60 Conn. 11, 15, 22 Atl. 441. "The proceeding to disbar an attorney is neither a civil action nor a criminal proceeding, but is a proceeding *sui generis*, the object of which is not the punishment of the offender, but the protection of the court." *In re Bowman*, 7 Mo. App. 567.

Section 11 of our rules regulating the admission, suspension and displacement of attorneys, indeed provides that complaints for misconduct shall be proceeded with as civil actions, but this does not either make the proceeding a civil action, or necessitate that the complaint be marked by the same precision of statement, or conformity to the recognized formalities or technicalities of pleading, which are expected in complaints in civil actions. The one supreme requisite is that it be sufficiently intelligible and informing to advise the court of the matter complained of, and the attorney of the accusation or accusations made against him, to the end that the former may determine whether or not it shall institute an inquiry, and, if one is ordered, properly conduct it, and that the latter may prepare to meet the charges against him, if inquiry shall be made. If this condition is satisfied, so that the accused is fully and fairly apprised of the charge or charges made, the complaint is sufficient to give him an opportunity to be fully and fairly heard, and therefore to entitle the court to entertain it, and proceed thereon to an investigation.

In *Randall* v. *Brigham*, 74 U. S. (7 Wall.) 523, 539, where the foundation of the proceeding was nothing more formal than a letter, the court used this language: "The information imparted by the letter was sufficient to put in motion the authority of the court, and the notice to the plaintiff was sufficient to bring him before it to explain the transactions to which the letter referred. The informality of the notice, or of the complaint by

the letter, did not touch the question of jurisdiction." "No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding." *Randall, Petitioner*, 93 Mass. (11 Allen) 473, 479; *In re Bowman*, 7 Mo. App. 567, 568; *Penobscot Bar Asso.* v. *Kimball*, 64 Me. 140, 147. "We entertain no doubt that a court has jurisdiction without any formal complaint or petition, upon its own motion, to strike the name of an attorney from the roll in a proper case, provided he has had reasonable notice, and been afforded an opportunity to be heard in his defence." *Ex parte Wall*, 107 U. S. 265, 272, 2 Sup. Ct. Rep. 569.

Turning now to the complaint, we find that it is confined to a simple narrative of alleged facts and occurrences touching the accused's conduct in the course of the settlement in his court of the estate of a deceased person. There is no such distinct and precise specification and characterization of acts of misconduct as would be incorporated into a criminal indictment, or even a well-drafted civil complaint. But the charges of misconduct are there. They are unmistakably involved in the narrative, and could scarcely be made more apparent by a more scientific pleading. The accused could not have failed to appreciate the charges involved, and be thereby supplied with all the information requisite for adequate preparation for the court's inquiry. That he was not misled or inadequately informed is apparent from an examination of the quite voluminous transcript of the evidence presented upon the hearing, which is before us in the record.

The story told in the complaint embodies the charge that the accused was guilty of misconduct, in that he obtained from the assets of the estate the payment to himself of $750 as compensation for pretended services rendered by him as an attorney on behalf of the estate, but never in fact rendered; that he exerted his influence

and authority, as the presiding judge of the court having jurisdiction of the settlement of the estate, to secure such payment; that in his efforts to secure it he resorted to deception,.misrepresentation and concealment, and that in those efforts he made use, in his official position, of threats calculated to produce the end desired for the purpose of coercing and compelling the payment and consent thereto on the part of the persons in interest.

These charges certainly are of misconduct unfitting one to continue to exercise the functions of an attorney, and they are all apparent upon the face of the complaint. The court did not err in accepting it as embodying charges deserving of investigation, or in calling upon the accused to answer to them. Inartificial as the complaint may be, it is no pointless story that it tells. The following language, used by the court in *In re Lowenthal*, 78 Cal. 427, 429, 21 Pac. 7, under somewhat similar conditions, is quite appropriate to it, and for the most part might well be borrowed by us in commenting upon it: "We must say that the accusation is not a model pleading in this respect. The facts stated, as we have said, are set out in narrative form, without any allegations connecting them with one or the other of the general charges of misconduct, and are unnecessarily long, but we think they are such as to show misconduct on the part of the respondent, as an attorney of this court, sufficient to put him upon his trial."

Before filing his demurrer to the complaint, counsel for the accused pleaded in abatement for two reasons, to wit: (1) that the proceedings were improperly begun by a presentment by a State's Attorney, and (2) that the State's Attorney, who began them by the presentation of the complaint, acted in the premises without legal right or authority, by reason of his bitter enmity to the accused and his bias and prejudice against him,

rendering him incapable of fair and impartial action as an inquiring and complaining officer.

The first of these reasons rests upon the provisions of chapter 120 of the Public Acts of 1907, p. 673, wherein the appointment of a grievance committee in each county is provided for, their duties defined, and certain powers conferred upon them. Among the duties enumerated in the first section is that of presentment to the court for offenses by attorneys not occurring in its presence. Section 10 of the rules of court (Practice Book, 1908, p. 206), subsequently passed under authority of § 458 of the General Statutes and chapter 256 of the Special Laws of 1907 (15 Special Laws, p. 220), provides that presentment may be made by the grievance committee or the State's Attorney or any member of the bar by direction of the court. The respondent's contention is that the provisions of the public act are controlling and exclusive, so that complaint can now be made by grievance committees only.

The effect of the adoption of the rule after the enactment of the statute aside, it is apparent that the statute did not intend to provide an exclusive mode of instituting inquiries into the conduct of attorneys. The manifest purpose of the statute was to equip grievance committees with powers adequate for the effective performance of their duties. These committees, already existing under judicial authority, were given statutory recognition, and powers adequate to the performance of the duties assigned them were conferred upon them. But there the Act stopped. Neither by expression nor by implication does it contain a restriction of the right of complaint to these committees, or a prohibition to the courts of the right to entertain complaints not thus presented. Such an apparent invasion of the power inherent in courts to supervise the conduct of

their own officers is not to be presumed, and the provisions of the statute give no countenance to the existence of a legislative intention to that end. See *Grievance Committee* v. *Ennis*, 84 Conn. 594, 603, 80 Atl. 767.

But that particular consideration aside, it is quite apparent that neither the statute nor the rule, save as the latter comprehends most, if not all, practicable methods of procedure, undertakes to frame exclusive provisions. Each provides methods of procedure, but neither exclusive methods. The courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. They may of their own initiative, and without complaint, set on foot inquiries as to professional conduct and fitness, or they may, in their discretion, entertain a complaint received from any source within or without the profession. Statute and rule provide orderly methods of procedure possessing the advantage of uniformity, thoroughness, and the promise of efficiency. But the power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. *Boston Bar Asso.* v. *Greenhood*, 168 Mass. 169, 183, 46 N. E. 568.

The second ground of abatement finds its justification in the qualification of impartiality required of grand jurors in the performance of their duties in presenting for criminal prosecution. The argument is that the same qualification is, under our system, required of a State's Attorney in the filing of informations by him, and further, by assumption rather than assertion, that it attaches to a State's Attorney's action when

he undertakes to act under the provision in our rules which names him as one who may present to the court complaint of misconduct on the part of an attorney.

It is unnecessary to follow the course of this argument, or to examine its premises. It is enough for present purposes to observe that proceedings looking to inquiry into the conduct of an attorney are in no sense, as we have already had occasion to notice, criminal prosecutions; that the State's Attorney, if he acts, does not appear as a prosecuting officer, and that his only duty in such case is to do what others might in calling the attention of the court to alleged misconduct on the part of one of its officers, and thereafter to conform to the behests of the court, in whose hands the proceeding rests. The duty which he performs, from first to last, is one which he owes as a member of the bar and an officer of the court, to whose orders in the premises he is subject, and not as a criminal prosecutor. He has no power to direct or control the proceeding. The complaint being made, the duty rests upon the court to see that the interests of justice are preserved and the rights of an accused attorney protected, and when that duty is performed, as it was in this case by the transfer of the management of the proceeding and the conduct of the hearing to confessedly impartial hands, the accused can have no just cause for complaint.

Beyond question the facts found, as a result of the court's inquiry, furnish ample justification for the order of disbarment. It is, however, asserted on behalf of the respondent, that some of these facts lie outside of the charges contained in the complaint. It is true that two features of the finding, involving serious matters of misconduct and possibly others of less importance, are not touched upon in the complaint. One of these, the most serious of all, could not be, since it related to the presentation upon the hearing of written testimony

falsified by the accused. But no one of these matters is made the basis of the judgment. Whether the one referred to as the most serious might not have been made a cause of disbarment, as having occurred in the presence of the court, we need not inquire. It is enough that it was not. The matters which in a sense lay outside of the field of the charges of the complaint, are related in the finding as incidental to its story and as having a bearing upon the charges made and the conclusions reached with respect to them; but the misconduct, for which judgment of disbarment was entered, as appears by the memorandum of decision, the judgment-file, and the finding, is limited to matters clearly within the complaint. The judgment-file, following the memorandum of decision, beyond finding the allegations of the complaint true, confines its finding of misconduct to three particulars: (1) that the respondent, "as an attorney, deliberately planned to obtain possession of, from an estate before him as judge of probate, a fee for services as attorney which he had not rendered, and to which he was in no manner entitled"; (2) that "he did collect and receive from said estate such fee as attorney, knowing that he was obtaining and receiving it without right and with intent to deprive the owners of the sum so received"; and (3) that he, "in order to retain to himself as attorney the sum so obtained, did, by threats to make use of his power as judge of probate to deprive the heirs of the testatrix of the immediate possession of the estate, extort from them, against their will, a waiver of objection to the allowance by him as judge of the fee received by him as attorney."

These matters were all within the complaint, and it cannot reasonably be contended that they do not amount to misconduct justifying the judgment. An examination of this statement of misconduct, furnishing the basis for the judgment, clearly shows that the court

understood its duty, and was careful to recognize the limitations which the complaint imposed upon it. This is further shown by its distinct ruling in favor of the respondent's claim of law, that it "could not legally find, consider or regard as a basis of judgment against the defendant in this case any operative fact not directly and positively alleged in the information." The story told in the finding furnishes more incidental details than does that in the complaint, and it is more precise in its statement of ultimate conclusions, and more direct in its characterization of wrongdoing; but it is, after all, the same story in essence, and leads to the establishment of the same operative facts in so far as they influenced the judgment.

It is further contended that the finding of the court, in its significant details and ultimate conclusions of misconduct, is not supported by the evidence, and should be corrected; and the evidence is before us to secure such correction. If it be assumed that our jurisdiction in proceedings of this character extends to the point of reviewing the conclusions of the investigating court upon matters of fact, as in civil actions, it nevertheless appears to us, upon an examination of the transcript of testimony, that the evidence is such that the court could not well have arrived at other conclusions than those upon which its judgment was based. See *In re Durant*, 80 Conn. 140, 149, 67 Atl. 497.

The question for the court's determination was whether the respondent, by reason of his past conduct evidencing his qualities of character and uprightness, was a fit person to be longer allowed to exercise the functions of an attorney and to act as an officer of the court in the administration of justice. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 16, 22 Atl. 441. Into the determination of this question there entered a large measure of judicial discretion, to be exercised not ar-

bitrarily, impulsively, or under the influence of hatred or prejudice, but reasonably, fairly and dispassionately. The accused attorney was entitled to notice of the charge against him and opportunity to be heard, to a fair and dispassionate investigation, and to a reasonable exercise of the judicial discretion. *In re Durant*, 80 Conn. 140, 148, 150, 67 Atl. 497. We fail to discover wherein he has not been accorded all these rights.

There is no error.

In this opinion the other judges concurred.