[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, the Statewide Grievance Committee, filed a presentment in accordance with Practice Book § 28B.1, charging attorney misconduct against the respondent, Burt M. Hoffman, who was admitted to the bar of this state in 1970 and practices law in Stamford. This section of the Practice Book refers to convictions of "serious crimes," defined as felonies, in "any court of the United States." The plaintiff, however, subsequently recognized that the defendant had pleaded guilty to a misdemeanor, not a felony. The statewide bar counsel and the attorney for the defendant agreed that this case could proceed directly to court as if the conviction was for a felony. Thus, this presentment was not reviewed by either the grievance panel in this judicial district or by the statewide grievance committee. Practice Book §§ 27F and 27J.
The amended presentment indicated that: (1) the defendant pleaded guilty on September 15, 1993, as "an accessory after the fact" to bank fraud, in violation of Title 18, United States Code, § 3, in the United States District Court for the District of Connecticut;[1] and (2) the respondent was sentenced to one year's imprisonment with sentence suspended, a three year period of probation, a fine of $2,500, and 600 hours of community service. The plaintiff seeks in this proceeding to have the defendant suspended from the practice of law for the reason that his conviction and the conduct that led thereto violated Rule 8.4 of the Rules of Professional Conduct. This Rule provides that it is professional misconduct for a lawyer to: "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."
This court conducted a hearing on the presentment during which the defendant testified, as did a number of other individuals in support of the defendant. In addition, several exhibits were introduced into evidence, including a copy of the "Information" filed by the United States Attorney, and an "addendum to presentence report investigation" submitted by defendant to the United States District Court. These documents, as supplemented by briefs submitted by both parties and extensive oral argument, indicate that the allegations contained in the Information filed against the defendant are accurate and that the following events occurred: (1) Charter Federal Savings Loan Association (Charter Federal), which was rounded in 1984 and was CT Page 8387 seized by federal regulators in June, 1990, had a wholly-owned real estate subsidiary known as Bedford Equities Corporation, which owned commercial property at 159 Franklin Street in Stamford; (2) at the behest of Charter Federal, the defendant, acting as Franklin-Summer Associates, purchased the subject premises in late September of 1987 for $2,000,000, including a down payment of $400,000; (3) all of the funds for the purchase of the subject premises came from Charter Federal, as the defendant had made it very clear that he had no funds with which to purchase the subject premises; (4) Charter Federal loaned the defendant $3,475,000, which was broken down into two components, $1,600,000 for acquisition of the premises, and $1,875,000 for development purposes; (5) certain officers of Charter Federal, in an attempt to show a profit on the sale of the subject premises by its real estate subsidiary to defendant, successfully urged the defendant to submit a false requisition and budget statement indicating that he had used $400,000 of his own funds for the down payment, whereas in fact all the funds for the purchase of 159 Franklin Street had come from Charter Federal; (6) Charter Federal took $400,000, plus $50,000 for closing costs, from the $1,875,000 earmarked for development purposes and transferred it to that part of the loan which was to be used for acquisition of the premises. In the addendum to the presentment report investigation, the defendant forthrightly acknowledges that "he had helped Charter Federal mislead the bank examiners," and that "[r]ealizing that his statements in the budget and requisition given him to sign by the Bank's officers had had that effect, he admitted his guilt to a misdemeanor charge."
As the defendant concedes, the only issue in this proceeding is what degree of attorney discipline is warranted. The plaintiff urges that the defendant be suspended from the practice of law for a limited period, and the defendant opposes such a sanction. The court is guided by the principle outlined inStatewide Grievance Committee v. Botwick, 226 Conn. 299, 307,627 A.2d 901 (1993), to the effect that our task is not "to mete out punishment to an offender, but [so act] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citations omitted; internal quotation marks omitted). "[O]f paramount importance in attorney discipline matters is the `protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing.'" StatewideCT Page 8388Grievance Committee v. Shluger, 230 Conn. 668, 681, ___ A.2d ___ (1994), quoting Grievance Committee v. Broder, 112 Conn. 263,265, 152 A. 292 (1930). Shluger, supra, 677, summarized this court's obligation as follows: "the trial court [is] responsible for evaluating the defendant's character, integrity and fitness to practice law in order to determine the sanction to impose against him." In this regard, Shluger, supra, 676, also indicates that in determining the proper sanction, the court is "free to consider other evidence relevant to the defendant's character, integrity and professional standing; see General Statutes § 51-94."[2]
 Statewide Grievance Committee v. Shluger, supra, 230 Conn. 673
n. 10, also noted that the trial court, in deciding the proper sanction to impose, had relied to some extent on the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), and that neither party had objected thereto. These Standards speak in terms of "aggravating" and "mitigating" factors, and represent, I believe, a useful guide to the imposition of a sanction. Aggravating factors set forth in the Standards include the following: "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; . . . . Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation . . . (j) interim rehabilitation in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses."
Before beginning an analysis of the aggravating and the mitigating factors in this case, comment is required on two factors which constitute, according to the defendant, mitigating factors in his case. The first is that the defendant deserves leniency because he did not defraud his own client or commit the misdemeanor in the course of practicing law. As the Supreme Court pointed out, however, the issue in a presentment proceeding is whether a respondent is fit or unfit to practice law, and "an CT Page 8389 offense that involves fraud, deceit and dishonesty . . . bears directly on his fitness to practice law." Statewide GrievanceCommittee v. Shluger, supra, 230 Conn. 668 (upholding a suspension of an attorney convicted of the felony of filing a false federal income tax return). The court went on to say that "[t]he fact that the defendant's criminal misconduct did not directly involve the discharge of his professional duties does not convince us otherwise, especially in light of the nature of his criminal conduct, for `[p]rofessional honesty and honor are not to be expected as the accompaniment of dishonesty in other relations. So it is that we, in common with other courts, hold . . . that misconduct, indicative of moral unfitness for the profession, whether it be professional or nonprofessional, justifies dismissal as well as exclusion from the bar.'" Id., 681 n. 17, quoting In re Peck, 88 Conn. 447, 450-51, 91 A. 274 (1914).
Actually, it is this court's belief that the offense in question can be regarded as more serious than defrauding one person, even a client. By submitting false information to Charter Federal, the defendant may well have misled the bank examiners who were charged with reviewing the bank's loan files. The bank examiners represent every citizen of the United States and their mission is to inspect the legality of the conduct of the bank, in this case a savings and loan association. It is well known that the failures of institutions of this kind have cost the taxpayers many billions of dollars. The record does not disclose to what extent the bank examiners at Charter Federal were actually thrown off the trail, and how much, if any, would have been saved had these false statements not been submitted by the defendant. The point, however, is that the defendant knowingly and intentionally submitted documents to Charter Federal, admittedly at the Bank's urging and on the advice of the Bank's attorney, the purpose of which was to deceive the bank examiners and throw them off the scent, so to speak, by enabling Charter Federal to show a profit on the sale of 159 Franklin Street to the defendant. Thus, to the bank examiners, Charter Federal appeared to be in better financial condition than was the case.
The second alleged mitigating factor is that the respondent has been a solo practitioner since 1990. For approximately eight years prior thereto, he was involved exclusively in real estate. Defendant urges that his "client base" is accordingly "fragile," and that a suspension, even for a very short time, would be disastrous to his practice. As mentioned at the oral argument, CT Page 8390 this reasoning would appear to suggest that a partner at a large firm should be punished more severely than a single practitioner who is just starting his practice. Actually, the defendant who has been practicing for almost twenty-five years, chose to involve himself full-time in real estate for a number of years, and then returned to the practice of law. The issue is fitness to practice law, not the impact that a suspension would have on a particular individual who, in this case, happens to practice law by himself.
Turning now to the American Bar Association's Standards, the only "aggravating" factor that the court can discern is "(b) dishonest or selfish motive." The Supreme Court in StatewideGrievance Committee v. Shluger, supra, 230 Conn. 680, indicated that the defendant's understatement of his taxable income "had been motivated solely by greed." The same motivation is evident in the present case, as it is obvious that had the defendant refused Charter Federal's entreaties, the deal would have been aborted and the defendant's opportunity to make a profit would have vanished.
With respect to "mitigating factors", the first is the absence of a prior disciplinary record. The plaintiff agrees that the defendant has never been the subject of any prior disciplinary proceedings in almost twenty-five years of practice. There is no pattern of repeated misconduct, as was the case inShluger, supra, 230 Conn. 680. It is also clear that the defendant made a "full and free disclosure" to the plaintiff and did not attempt to impede the plaintiff in its duties. As to "character and reputation", in this court's opinion, the record is clear that the defendant is a most estimable citizen of this state, as well as a devoted husband and father to his three sons. A number of individuals testified about his involvement in community activities, including Little League sports, his sons' school, and assisting learning disabled children. The defendant has also been an enthusiastic participant in a center for minority students, and in promoting housing for minorities and the elderly under the auspices of Neighborhood Presentation Program, Inc. In short, I believe that the defendant scores high on this particular mitigating factor.
With respect to the factor of "other penalties or sanctions", it has been indicated previously that the defendant received three years' probation, a fine of $2,500, and 600 hours of community service, not inconsiderable sanctions by any means. As CT Page 8391 to the factor of "remorse", I quote an excerpt from a letter received from a prominent attorney in Stamford: "I also know, from the late night conversations, the telephone calls and the personal interface the depth of the sorrow which [defendant] now feels and the punishment of the anguish and despair which he has already inflicted upon himself. He will carry with him always the unilaterally imposed self-defacement of his actions." In this context, note has also been made that the defendant pleaded guilty in the District Court, and has not attempted in this proceeding to claim that he did not know what he was doing, or to make any excuse for his actions. Without question he is truly remorseful for his conduct, which was decidedly out of character and aberrational.
At this point, the Standards, as well as the court's own judgment, would dictate that the defendant be suspended from the practice of law for a relatively limited period of time, perhaps thirty or sixty days, because of the seriousness of his offense in deliberately acting as an accessory after the fact to bank fraud. However, one factor which has not yet been noted swings the pendulum, albeit only slightly, away from a suspension and towards a reprimand. Reference is to a letter received by this court from the United States's Attorney's Office dated July 25, 1994. This letter states that the defendant's "willingness to cooperate with the government" predated his arrest, guilty plea and plea agreement with the government. The U.S. Attorney's Office further states that "[i]t is the Government's belief that Mr. Hoffman has been truthful throughout his cooperation." The letter also points out that the defendant has agreed to testify against the chairman of Charter Federal who was indicted in the fail of 1993 by the government on six counts of bank fraud and misapplication of bank funds.
Having given the matter a good deal of thought, including a consideration of the defendant's character. integrity and fitness to practice law, I have concluded that a reprimand will suffice to protect the public and the administration of justice. Accordingly, pursuant to Practice Book § 31, Attorney Hoffman is reprimanded for his conduct leading to his conviction of violating Title 18, United States Code, § 1014.
So Ordered.
Dated at Stamford, Connecticut, this 24th day of August, 1994. CT Page 8392
William B. Lewis, Judge