[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PRESENTMENT OF ATTORNEY
I.
The Grievance Panel for the Hartford/New Britain Judicial District, G.A.'s 12, 15, 16 and 17[1] has filed the instant presentment seeking disciplinary action against Daniel J. Millstein.
The proceeding arises as a result of a March 8, 1994 complaint filed by Mr. Millstein's clients, Thomas H. Tamoney, Jr. and Lucile H. Tamoney, in connection with the refinancing of their home. The Tamoneys claimed that after receiving the new mortgage funds, Mr. Millstein did not pay off the old mortgage. On May 18, 1994, the applicant determined that probable cause existed that Mr. Millstein had violated one or more of the Disciplinary Rules. On June 10, 1994, the applicant filed this action seeking an order of interim suspension pursuant to Practice Book Section 28C[2] and the appointment of a trustee pursuant to Practice Book Section 46B.[3] A hearing date was scheduled for July 6, 1994. On June 21, 1994, Mr. Millstein, as well as his attorney, wrote to the applicant's attorney advising that he would not appear to contest the application. His attorney also indicated that Mr. Millstein was no longer practicing law and that any action be stayed due to a pending criminal investigation. On June 10, 1994, Mr. Millstein also advised the Chief Clerk of the Hartford Superior Court that he was resigning from the Bar of the State of Connecticut effective immediately.[4] On July 6, 1994 the court, Langenbach, J., placed Mr. Millstein on interim suspension and on July 27, 1994, the court, appointed Attorney Vincent L. Diana as trustee pursuant to Practice Book Section 46B. Attorney Diana filed a report with the court on September 12, 1994 reviewing the substantial work that he had undertaken.
On May 30, 1996, the Statewide Grievance Committee filed an amended presentment based on the conviction of a felony, pursuant to Practice Book §§ 28B[5] and 28B.1,[6] indicating that on May 16, 1996, Mr. Millstein had been convicted, after pleas of CT Page 7079 guilty, to two counts of larceny in the first degree in violation of General Statutes section 53a-122 (a)(2) as well as being convicted on May 22, 1996 to one count of Bankruptcy Fraud — Concealment of Assets in violation of 18 U.S.C. § 152.
In the state convictions, Mr. Millstein was sentenced on the first count, to a term of fifteen years, execution suspended after six years, and a term of probation for five years and for the second count, a term of six years to run concurrently with the first count. In the federal case, Mr. Millstein was sentenced to a term of thirty-seven months which was to run concurrently with his state sentence, with a three year term of supervised release upon release from custody. In addition to certain miscellaneous terms, he was ordered to make restitution of $197,958.02 — a figure representing the total client proceeds which were retained by Mr. Millstein from three sales of real property.[7]
On October 24, 1996, the Statewide Grievance Committee filed another amended presentment setting forth the names and sums of money involved as the factual basis for the state larceny convictions.[8] The federal conviction remained as the basis for the second count and the Committee added a third count alleging that Mr. Millstein violated Rules 1.3, 1.4, 1.5, and 8.4 of the Rules of Professional Conduct by, inter alia, improperly probating an estate. A fourth count was added indicating that Mr. Millstein violated Rules 1.5, 1.15 and 8.4 in failing to properly disburse proceeds of a settlement. A fifth count alleged that he violated Rules 1.15 and 8.4 in failing to properly disburse certain proceeds to a client. A sixth count alleges that he violated Rules 1.1, 1.3, 1.4 and 1.7 by, inter alia, failing to disclose a conflict and properly represent a client. A seventh count alleges that he violated Rules 1.1, 1.3, 1.4 and 8.4 in failing to attend a pretrial and notifying a client on the status of a case. An eighth count alleges that he violated Rule 1.5 in attempting to bill and thereafter file suit against an individual with whom he had no fee agreement. Finally, a ninth count alleges that he violated Rules 1.3 and 1.4 in failing to promptly attend to an accounting for a client.[9]
On October 24, 1996, the respondent admitted the essential factual allegations of counts 1-8, but denied the allegations of count nine. Additionally, the respondent left the Committee to its proof that these allegations constituted a violation of the Rules. At the hearing on March 12, 1997, the Committee indicated CT Page 7080 that it was not pursuing paragraphs 7-9 of count six and only seeking a penalty for a violation of Rule 1.7 (and not Rules 1.1, 1.3, and 1.4). It further amended count seven by withdrawing the allegation of paragraph 8 and amending paragraph 9 by claiming a violation of Rule 1.3 only. Similarly, the Committee indicated that it was only claiming a violation of Rule 1.5 in count eight for the failure of the respondent to have a fee agreement. Finally, the Committee withdrew count nine.
The respondent, through his attorney, acknowledged that the allegations were true and advised the court of his obligation to accept responsibility for these violations.
 II.
As noted by our Supreme Court in Statewide GrievanceCommittee v. Rozbicki, 211 Conn. 232, 238-39, 558 A.2d 986
(1989):
 "`Disciplinary proceedings are for the purpose of preserving the courts "from the official ministration of persons unfit to practise in them." Ex Parte Wall, 107 U.S. 265, 288 (1883); Heiberger v. Clark, [148 Conn. 177, 183, 169 A.2d 652
(1961)]; Grievance Committee v. Broder,
[112 Conn. 263, 265, 152 A.2d 292 (1930)]; In re Peck,
[88 Conn. 447, 452, 91 A. 274 (1914)]. . . .' Heslin v. Connecticut Law Clinic of Trantolo Trantolo,
[190 Conn. 510, 524, 461 A.2d 938 (1983)]. `"`The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court.' In re Bowman, 7 Mo. App. 569 [1879].'" In re Application of Pagano,
[207 Conn. 336, 339, 541 A.2d 104 (1988)]; In re Peck, supra, [88 Conn. 452]. Once the complaint is made, `the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require.' [Id.] `[T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct [. . . .]' In re Peck, supra, 457." CT Page 7081
In determining an appropriate disciplinary measure, it is helpful to turn to the American Bar Association's Standards for Imposing Lawyer Sanctions. Although they have not been officially adopted in this state, they set forth a useful list of aggravating and mitigating factors to analyze. See, StatewideGrievance Committee v. Shluger, 230 Conn. 673, f. 10 (1994). The aggravating factors at Section 9.22, include the following:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
 (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
 (g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
 (k) illegal conduct, including that involving the use of controlled substances.
Mitigating factors, at Section 9.32, include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems; CT Page 7082
 (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
 (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
 (i) mental disability or chemical dependency including alcoholism or drug abuse when;
 (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
 (2) the chemical dependency or mental disability caused the misconduct;
 (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
 (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
A review of the complaint, with the allegations admitted, surely reveals a dishonest or selfish motive, a pattern of misconduct and multiple offenses. Balanced against this, is the absence of a prior disciplinary record, evidence of personal or emotional problems including evidence of alcohol and drug abuse, full and free disclosure and a cooperative attitude toward the disciplinary board, the imposition of other penalties and CT Page 7083 finally, the showing of remorse. At the hearing, the respondent noted that he was addicted to gambling as well as to alcohol. In its simplest terms, this is a case where the respondent fed his gambling and alcohol addiction with his clients' money. The life of misconduct eventually caught up to him and he is now paying the price: he is serving a fifteen year sentence, suspended after six years, with a five year probation and an order of restitution of $197,958.02. His remorse, however, appears genuine; he readily admits to this court his wrongdoing and his violation of that faith that others entrusted to him. Mr. Millstein has been active in pro bono endeavors in prison: he tutors GED candidates, he clerks in the library, he chairs the AA and NA meetings, and is the editor of the paper. He also indicates that he has counseled other gambling addicts. The respondent thus argues that he has received enough punishment and that this court should "leave the door open" to allow him to practice in the future unless it finds that there is no possibility that he should practice.
Practice Book section 31(b) requires this court to determine the final discipline to be imposed as a result of the respondent's felony convictions. "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him." In Re Peck, supra,88 Conn. 450. "Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important function of the legal profession." Statewide Grievance Committee v. Botwick,226 Conn. 299, 307, 627 A. N.E.2d 901 (1993). His "convictions evidence the fact that he has failed to meet the most important of those conditions, namely, that he obey the very laws which he has sworn to uphold." Mitchell v. Association of the Bar of theCity of New York, 351 N.E.2d 743, 746 (N.Y. 1976).
This court surely notes and, indeed, commends Mr. Millstein's current rehabilitative actions. As noted by the Supreme Court of California in Howard v. State Bar of California, 793 P.2d 62
(Cal. 1990) "[w]hen evidence of alcohol abuse at the time of an attorney's professional misconduct is coupled with evidence that the abuse was addictive in nature and casually contributed to the misconduct, and when the attorney demonstrates a meaningful and sustained period of successful rehabilitation, such evidence should be considered as a factor in mitigation of disciplinary CT Page 7084 sanctions" citing In re Billings, 787 P.2d 617 (1990). Id., 66. Notwithstanding this, however, "betraying clients by converting their money is conduct not acceptable to the bar under any circumstances". In Re Driscoll, 423 N.E.2d 873 (Ill., 1981). The Driscoll court further added,
 Perhaps in rare cases alcoholism might so change the character of the misconduct or so distort the attorney's state of mind as to provide a complete excuse. Usually, however, alcoholism is at most an extenuating circumstance, a mitigating fact, not an excuse. The attorney's impaired judgment diminishes the responsibility he must bear, but does not eliminate it. Not all alcoholics appropriate the money of their clients; the slide from drink to dishonor may be smooth, but it is neither automatic nor uncontrollable. We can understand it; we cannot excuse it or overlook misconduct as serious as respondent's. Alcoholics need not be treated just like other people; our duty to uphold the standards and reputation of the profession is not incompatible with sympathy and leniency for victims of alcoholism. But their tragedy cannot be used as a license to exploit clients by taking their money.
Id. 874-875 In the end, it is clear that the safeguarding of the public must outweigh the individual desires and present actions of the respondent. His situation may be tragic but his prior acts are too numerous and unconscionable to warrant anything other than the harshest penalty. Mr. Millstein's violations directly impacted at least twenty five individuals and legal entities and involved staggering amounts of money. Accordingly, this court enters an order of disbarment.[10]
Marshall K. Berger, J.