[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In a Memorandum of Decision dated October 2, 2001, the undersigned found that the Respondent had violated Rule 8.4(3) of the Rules of Professional Conduct and scheduled a hearing to determine the appropriate discipline to be imposed. At that hearing, held on November 16, 2001, the court heard the arguments of counsel, testimony from the respondent's psychiatrist, Stanley Possick, MD, and a statement from the respondent himself.
In brief, the undersigned had concluded that the respondent, a terminated associate lawyer in the firm of Perkins Mario, PC, had exhibited dishonest and deceitful conduct by withholding from his former employers the fact that he had compromised a bill for fees due from a former client of the firm and was using the proceeds for his own purposes in violation of a written agreement to turn over half of those proceeds to the firm within two days of their receipt. Based on that finding, the petitioner seeks to have this court suspend the respondent from the practice of law for a period of three years. The respondent acknowledges that his conduct was wrongful but suggests that, under all the circumstances, a reprimand would be the appropriate sanction.
In attempting to reconcile the competing claims of the parties, the court is mindful of the fact that a "presentment proceeding is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." Statewide Grievance Committee v. Rozbicki,219 Conn. 473, 483 (1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1170,117 L.Ed.2d 416 (1992).
"`An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to CT Page 15941-ft exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession."Doe v. Statewide Grievance Committee, 240 Conn. 671, 684-85, 694 A.2d 1218
(1997), quoting Massameno v. Statewide Grievance Committee, 234 Conn. 539,554-55, 663 A.2d 317 (1995).
While they have not been officially adopted as rules by the Judges of the Superior Court, the American Bar Association's Standards for Imposing Lawyer Sanctions have frequently been utilized in determining the appropriate discipline to be imposed in presentment matters. Our Supreme Court has noted their usefulness in Statewide Grievance Committee v.Spirer. 247 Conn. 762, 782, 725 A.2d 948 (1999); see also StatewideGrievance Committee v. Shluger. 230 Conn. 668, 673 n. 10, 646 A.2d 781
(1994). Section 3.0 of the Standards states that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."
The duty in this case concerned the Respondent's contractual obligation to endeavor to collect certain fees from a former client and turn half of the proceeds over to his employer within two days of their receipt by him. The Respondent violated that duty, although the undersigned has concluded that he had no intention of permanently depriving his former firm of the monies due to it.
The Respondent's mental state at the time of the misconduct was quite clearly affected by his having been fired and finding himself on his own, with a family to support, attempting to practice law as a solo practitioner for the first time in his life, and frustrated in his efforts to collect fees due from a former client, a principal of which was a family member of his. The evidence produced at the disposition hearing suggests that his mental state was complicated by his family history, and that since the filing of the complaint in this matter, he has actively, and apparently effectively, treated with a psychiatrist. This history does not excuse the Respondent's conduct but does suggest that his dishonesty was an aberrational situational response to unusual financial CT Page 15941-fu pressures.
It is difficult for the court to conclude that the Respondent's conduct caused substantial injury. In light of the testimony concerning the difficulty of collecting any fees at all from the client in question, the law firm has done as well as could be expected as the result of the Respondent's collection efforts on its behalf. The firm was entitled to the funds within two days after their receipt by the Respondent, but the delay in payment, while an injury, is not alone of such magnitude as to warrant suspension.
Section 9.1 of the ABA Standards states that "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." The § 9.22 aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (I) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances.
The § 9.32 mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of a successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (1) remorse; (in) remoteness of prior offenses.
Possible aggravating factors in this case include a dishonest or selfish motive (retaining the money for the Respondent's own use to CT Page 15941-fv enable him to start his own practice in the wake of his termination by Perkins and Mario), refusal to acknowledge the wrongful nature of his conduct (at least until the time of the final hearing in this case, at which the respondent accepted responsibility for his actions), substantial experience in the practice of law (the respondent was admitted to the bar in 1976), and indifference to making restitution (although he had paid back $17000 of the $21000 he owed to his former firm at the time that the firm brought its grievance complaint against him, the respondent had not repaid the remaining $4000. At the final hearing in this matter, however, he did represent that the remaining $4000 would be paid by November 21, 2001 and has since submitted proof that he has done so.)
Possible mitigating factors include absence of a prior disciplinary record, personal and emotional problems (the respondent's psychiatrist explained the etiology of an anxiety disorder that was exacerbated by the respondent's suddenly finding himself trying to practice law on his own after a career spent as an employee of medium and large sized law firms), timely good faith effort to make restitution or to rectify consequences of misconduct (as previously mentioned, the respondent had made partial restitution before the initiation of the grievance and completed it before the date of this decision), character or reputation (the respondent submitted several positive character references by fellow attorneys), mental disability (the anxiety disorder) and remorse (the respondent appeared to be genuine in his expression of shame and remorse at the final hearing in this case).
Determining the appropriate form of discipline is complicated in this matter by the fact that, although the misconduct arose out of the practice of law, it was directed neither at a client nor an adversary, but rather at his former employer. The undersigned has little doubt that had the respondent's acts of dishonesty been directed at a client or former client, a substantial term of suspension would be warranted. If the conduct had been directed against another attorney in the course of litigation, the result would probably be similar. Here, however, the victim of the respondent's wrongful conduct was a law firm which, it must be said, had treated him rather shabbily in the wake of his termination. Should the fact that the respondent behaved dishonestly and deceitfully in his relations with lawyers who previously had been his employers, rather than in his relations with clients or adversaries, in any way mitigate the severity of the discipline to be imposed?
In Statewide Grievance Committee v. Presnick, 18 Conn. App. 316, 324,559 A.2d 220 (1989), the Appellate Court held that "[i]t is firmly established that misconduct of an attorney, whether it be in the practice CT Page 15941-fw of the profession or in matters dehors the practice of law, justifies discipline, including exclusion from the bar." See also In re Peck,88 Conn. 447, 450-51, 91 A. 274 (1914). Thus, even though the Respondent's conduct was not directed against clients and was ancillary to the practice of law, the court concludes that it is subject to the full range discipline which the law provides. Yet, the public protection aspects of attorney discipline clearly contemplate that the harsher forms of discipline ought to be reserved for conduct that menaces the client community and the public at large, rather than former employers. Although the conduct of the respondent is not rendered any less dishonest because of the fact that it was directed against his former finn, the fact that it was not directed against clients or the public at least tends to undercut the Petitioner's claim that the public at large is placed at risk if the respondent continues to practice law. Furthermore, and while this in no way excuses the respondent's conduct, his former law firm, or at least one of its principals, had given little regard to the fact that it was putting the respondent under enormous pressure, first by terminating his employment and sending him off at the age of 50 to fend for himself as a solo practitioner for the first time, and, second, by pressuring him to collect fees from former clients or face unspecified harsh consequences.
The Petitioner has pointed out that to be effective, a period of suspension should last for at least six months. This court is persuaded that a suspension of the magnitude proposed by the petitioner, three years, would be altogether disproportionate both to the misconduct itself and to the character of the respondent. If any period of suspension should be imposed, it should be for no more than six months, but the court has had a hard time convincing itself that the minimal added degree of public protection to be derived from such a sanction justifies the disruption of the personal and professional life of an attorney who has practiced law for twenty five years with no disciplinary action having been taken against him and whose dishonest conduct arose out of a breach of a contract with his former employers.
The court therefore reprimands the Respondent, but in doing so, it wishes to make clear that it views any act of dishonesty by an attorney as a serious matter. Moreover, it views the reprimand imposed in this case not as a lement sanction but rather a strong expression of its revulsion for dishonesty on the part of any attorney, tempered only by the context in which the misconduct occurred, the extent to which it has been rectified, and the fact that the respondent has not previously been disciplined. CT Page 15941-fx
At the final hearing in this matter, the respondent addressed the court and expressed his "shame" over his misconduct. The court views this reprimand as a memorialization of that shame and is persuaded that as a sanction, it is sufficient to ensure that the "administration of justice may be safeguard and the courts and the public protected . . ." Doe v.Statewide Grievance Committee, id.
Jonathan E. Silbert, Judge